IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSE LUIS RIVAS CALLE                    :

                                         :

        v.                               :   Civil Action No. DKC 11-0716

                                         :

CHUL SUN KANG OR                         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Fair Labor Standards Act ("FLSA") is the motion to dismiss or, alternatively, for summary judgment filed by Defendant Chul Sun Kang Or. (ECF No. 6). The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

**I.  Background**

The following facts are either alleged by Plaintiff Jose Luis Rivas Calle or taken in the light most favorable to him. Plaintiff worked exclusively for Defendant's construction business from January 2008 through March 2011. His job duties primarily included the installation of doors, windows, and siding for Defendant's residential clients, and with limited exceptions, Plaintiff performed these services in Maryland.

Defendant was responsible for Plaintiff's work schedule, including his work hours.  Each morning, Defendant would meet Plaintiff at a specified bus stop, drive him to a work site, and instruct him to install windows, doors, or siding.  "On occasion," Defendant would also instruct Plaintiff to perform other types of work at the site.  (ECF No. 6-2 ¶ 16).  Defendant regularly supervised Plaintiff's work to ensure that it was of "sufficient quality."  (ECF No. 8-1 ¶ 16).  Additionally, while Plaintiff brought his own tool belt to work, Defendant provided all large tools and scaffolding necessary for Plaintiff to complete his assignments.

These assignments required Plaintiff to work between ten and twelve hours each day, leading him to work approximately sixty-six hours per week.  Defendant, however, never paid Plaintiff at an overtime rate for the excess hours he worked.  Rather, Defendant paid Plaintiff on a weekly basis using a daily fixed rate.[1]  Defendant terminated the parties' working relationship in March 2011.

Shortly thereafter, on March 17, 2011, Plaintiff filed this action against Defendant.  In the complaint, Plaintiff alleges that Defendant violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, the

---

[1] Initially, Plaintiff was paid at a daily rate of $160, but Defendant reduced this rate to $140 in December 2009, and $120 shortly before March 2011.  Plaintiff's compensation did not include benefits.

Maryland Wage and Hour Law, Md. Code. Ann., Lab. & Empl. §§ 3-401, *et seq.* ("MWHL"), and the Maryland Wage Payment and Collection Law, *id.* §§ 3-501, *et seq.* ("MWPCL"), by refusing to pay overtime for all hours worked in excess of a forty-hour week.  On May 19, 2011, Defendant moved to dismiss or, alternatively, for summary judgment.[2]  Plaintiff timely opposed this motion, but Defendant did not file a reply.

## II. Analysis

Defendant has moved to dismiss or, in the alternative, for summary judgment on two grounds.  The parties rely on matters outside the pleadings only when addressing the second ground – whether Plaintiff was an independent contractor, rather than an employee.  Thus, while resolution of this issue requires treating Defendant's motion as one for summary judgment, his first argument, *i.e.*, that the complaint's allegations are themselves insufficient to state a claim for relief, will be resolved as a motion to dismiss.

### A.   Motion to Dismiss for Failure to State a Claim

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the complaint.  *Presley*

---

[2] Defendant attached an exhibit to his motion that included copies of Plaintiff's Forms 1099-MISC for the years 2008 through 2010.  These copies, however, did not redact Plaintiff's social security number.  To correct this problem, Defendant filed a redacted version of the exhibit later the same day.  (*See* ECF No. 7).

*v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).   Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, the court need not accept unsupported legal allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events,

4

*United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Defendant contends that Plaintiff's allegations are "legally insufficient under applicable law" to state a claim for relief. (*Id.* at 7). Plaintiff disagrees, maintaining that his allegations adequately state a claim for overtime pay under the FLSA, MWHL, and MWPCL. Both parties are partially correct. That is, while Plaintiff sets forth sufficient allegations to proceed under the FLSA and MWHL, his MWPCL claim must be dismissed for failure to state a claim.

## 1. Plaintiff Has Stated a Claim for Overtime Compensation Under the FLSA and MWHL

Both the FLSA and MWHL generally require employers to provide their employees with overtime compensation for all hours worked in excess of a forty-hour week. 29 U.S.C. § 207; Md.

Code Ann., Lab. & Empl. §§ 3-415, 3-420.[3]  To state a claim for overtime compensation under the FLSA and MWHL, a plaintiff must set forth factual allegations demonstrating that he worked more than forty hours per week without receiving overtime pay from his employer and that his employer knew or should have known about the unpaid overtime.  *Butler v. DirectSat USA, LLC*, 800 F.Supp.2d 662, 667 (D.Md. 2011); *Avery v. Chariots for Hire*, 748 F.Supp.2d 492, 496 (D.Md. 2010).[4]  Because, as a practical matter, the requirements to state such a claim "are quite straightforward," *Sec'y of Labor v. Labbe*, 319 F.App'x 761, at *1 (11th Cir. 2008), courts have routinely found that plaintiffs satisfy this standard merely by alleging that their employers

---

[3] The FLSA applies only to "covered employers." *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 426-27 (4th Cir. 2011). "There are two general ways employers become covered.  One is that the employee requesting FLSA protection is himself 'engaged in commerce or in the production of goods for commerce.'  The other is that the employee 'is employed in an enterprise engaged in commerce of in the production of goods for commerce.'" *Rains v. E. Coast Towing & Storage, LLC*, --- F.Supp.2d ---, 2011 WL 5121124, at *2 (E.D.Va. Sept. 20, 2011) (citations omitted) (quoting 29 U.S.C. § 207(a)(1)).

[4] The MWHL is "the State parallel" to FLSA, *Friolo v. Frankel*, 373 Md. 501, 513 (2003), and the requirements to state a claim under the MWHL "mirror those of the federal law," *Turner v. Human Genome Scis., Inc.*, 292 F.Supp.2d 738, 744 (D.Md. 2003).  Therefore, Plaintiff's "claim under the MWHL stands or falls on the success of [his] claim under the FLSA." *Turner*, 292 F.Supp.2d at 744; *see also Jennings v. Rapid Response Delivery, Inc.*, No. WDQ-11-0092, 2011 WL 2470483, at *5 (D.Md. June 16, 2011) (finding that the plaintiffs had sufficiently pleaded a claim under the MWHL by adequately pleading their FLSA claim).

did not provide them with overtime pay even though they worked in excess of forty hours during the workweek, *see, e.g.*, *Hawkins v. Proctor Auto Serv. Ctr.*, No RWT-09-1908, 2010 WL 1346416, at *1 (D.Md. Mar. 30, 2010) (concluding that the plaintiff "clearly state[d] a[n FLSA] claim that is plausible on its face" when asserting that "he worked more than forty hours a week . . . and that Defendants did not compensate him for the overtime").

Here, Plaintiff's allegations satisfy this standard and are sufficient to state a claim under the FLSA and MWHL.   The complaint asserts that Plaintiff worked in Defendant's construction business – an "enterprise" engaged in commerce – for more than three years installing doors, windows, and siding. (ECF No. 1 ¶¶ 2-3, 5).   It also notes that Defendant, who served as Plaintiff's "supervisor and determined [his] rate and method of compensation," provided Plaintiff with work that took him "approximately sixty-six . . . hours per week" to complete. (*Id.* ¶¶ 2, 6).   Yet despite working well in excess of forty hours per week, Plaintiff alleges that he never received any overtime compensation.   Rather, the complaint contends that Defendant paid Plaintiff "straight pay," at a fixed daily rate, "for all hours worked including overtime." (*Id.* ¶ 8).[5]

---

[5] The fact that Defendant paid Plaintiff using a fixed daily rate, rather than a fixed hourly rate, has no bearing on Plaintiff's ability to state a claim for overtime compensation.

Defendant asserts that Plaintiff has set forth no facts "delineating the purported [overtime] violations," contending "[a]ll that Plaintiff has done is conclude that Defendant is an 'employer' and an 'enterprise'" under the FLSA. (ECF No. 6-1, at 7-8) (further emphasizing that Plaintiff did not provide "dates, witnesses, or other relevant information" in support of his claims). This contention, however, wholly ignores the factual allegations above and simply demands too much at this early stage of the proceedings.[6] Plaintiff's allegations, which detail the type of work activities that occupied his overtime

---

*See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 308 (4th Cir. 2006) (permitting security agents who worked in excess of forty hours per week to seek overtime pay when they had been paid only "a set rate for each shift worked").

[6] To the extent Defendant is arguing that the allegations regarding Plaintiff's status as an "employee" or Defendant's status as an "enterprise" are themselves insufficient to state a claim, these arguments are also without merit. *See Speert v. Proficio Mortg. Ventures, LLC*, No. RDB 10-718, 2010 WL 4456047, at *2-3 (D.Md. Nov. 1, 2010) (finding that the plaintiffs had adequately alleged an employment relationship with the defendant by describing their duties and asserting that they worked for the defendant for three months); *Puleo v. SMG Prop. Mgmt., Inc.*, No. 6:08-cv-46-Orl-22DAB, 2008 WL 3889727, at *2 (M.D.Fla. Aug. 20, 2008) (concluding that a worker had stated a claim under the FLSA by alleging that the defendant mortgage company, a business qualifying as an enterprise, employed him on an hourly basis for more than forty hours per week without providing overtime pay); *Simmons v. United Mortg. & Loan Inv., LLC*, No. 3:07CV496-MU, 2008 WL 2277488, at *3 (W.D.N.C. May 30, 2008) (finding allegations that the defendant mortgage company was "an employer engaged in interstate commerce and/or the production of goods for interstate commerce" sufficient to infer that the company was an "enterprise"), *vacated in part on other grounds by* 634 F.3d 754 (4th Cir. 2011).

hours as well as the approximate number of hours he worked each week while Defendant supervised him, provide Defendant with sufficient notice about the basis of Plaintiff's FLSA and MWHL claims to enable him to form a response. *Butler*, 800 F.Supp.2d at 667-68.    Thus, Defendant's attempt to have these claims dismissed for failure to state a claim must fail.

## 2.   Plaintiff Has Not Stated a Claim for Overtime Compensation Under the MWPCL

The MWPCL permits employees to recover treble damages when their employers do not pay them on a regular basis or promptly upon termination. *Butler*, 800 F.Supp.2d at 669 (citing Md. Code Ann., Lab. & Empl. §§ 3-502, 3-505).    Plaintiff requests such damages in this action, asserting that the MWPCL covers overtime compensation claims because its definition of "wage" expressly includes overtime pay.    (ECF No. 1 ¶¶ 20-21 (citing Md. Code Ann., Lab. & Empl. § 3-501(c))).    This argument, however, misunderstands the nature of the causes of action provided by the MWPCL.

> The MWPCL does not . . . provide a cause of action directed at [an] employer's failure to pay overtime.    For these actions, plaintiffs must look to the MWHL, Md. Code Ann., Lab. & Empl. §§ 3-415 and 3-420. Accordingly, other judges in this district have rejected plaintiffs' attempts to state claims for violation of the MWPCL where the parties' core dispute is whether plaintiffs were entitled to overtime wages at all and not whether overtime wages were paid on a regular basis or upon termination. *See*

> *McLaughlin* [*v. Murphy*, 372 F.Supp.2d 465,
> 474–75 (D.Md. 2004)]; *Williams v. Md. Office
> Relocators*, 485 F.Supp.2d 616, 621–22 (D.Md.
> 2007); *Tucker v. Sys. Specialist Furniture
> Installation, Inc.*, No. JFM-07-1357, 2007 WL
> 2815985 *1 (D.Md. Sept. 26, 2007); *Watkins
> v. Brown*, 173 F.Supp.2d 409, 416 (D.Md.
> 2001); *Fisher v. Rite Aid Corp.*, No. 09-
> 1909, 2010 WL 2332101 *2 (D.Md. June 8,
> 2010).

*Butler*, 800 F.Supp.2d at 670.

In the complaint, Plaintiff focuses his allegations on Defendant's failure to pay him the overtime compensation he earned while working in excess of forty hours per week. (*See* ECF No. 1 ¶ 8) ("Defendant never compensated Plaintiff" with overtime pay."). "He does not allege that [Defendant] failed to pay him regularly, but that [Defendant] failed to pay him enough; and he does not allege that [Defendant] failed to pay him . . . overtime due him upon his termination, but that it failed to pay him these wages at all." *McLaughlin*, 372 F.Supp.2d at 475. Plaintiff's opposition memorandum confirms this conclusion. Indeed, while he argues that Defendant "never compensated [him] . . . for overtime work," Plaintiff does not once mention Defendant's failure to pay him regularly or upon his termination. (ECF No. 8 ¶ 11).[7] Accordingly, Plaintiff's

---

[7] Plaintiff also relies exclusively on cases addressing the sufficiency of FLSA or MWHL claims when arguing that he has stated a claim under the MWPCL.

MWPCL claim for overtime compensation must be dismissed for failure to state a claim upon which relief can be granted.

**B. Motion for Summary Judgment**

Defendant further argues that, even if Plaintiff has stated claims for overtime compensation, those claims necessarily fail at the next step because the evidence demonstrates that Plaintiff was an independent contractor, rather than an employee. A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment."

*Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

The gravamen of Defendant's argument on summary judgment is that Plaintiff was not his employee because the parties treated Plaintiff's position as one of an independent contractor. Plaintiff disagrees, contending that the "economic reality" of the parties' working relationship indicates that Plaintiff worked as an employee.  (ECF No. 8, at 10).  Both parties have submitted sworn declarations in support of their respective positions and, taking the facts in the light most favorable to Plaintiff, Defendant's request for summary judgment on this ground must fail.

Both the FLSA and MWHL define the employment relationship "very broadly, consistent with the remedial purposes of the legislation."  *Heath v. Perdue Farms, Inc.*, 87 F.Supp.2d 452, 456 (D.Md. 2000) (quoting 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work"); Md. Code Ann., Lab. & Empl. § 3-101(c) ("'Employ' includes: (i) allowing an individual to work; and (ii) instructing an individual to be present at a work

site."). As a result, the "economic reality" of the parties' working relationship, rather than the label they give to that relationship, is dispositive of this issue. *Id.* (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)). To determine whether the "economic reality" indicates that an employment relationship exists, courts look to a six-factor test:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz*, 466 F.3d at 304-05; *see also Heath*, 87 F.Supp.2d at 457 (looking to these factors when a defendant challenged FLSA and MWHL claims by contending that no employment relationship existed between the parties). The focal point of this analysis is "whether the worker is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself." *Schultz*, 466 F.3d at 304 (internal quotation marks and brackets omitted).

At the outset, Defendant's reliance on his status as a sole proprietor and Plaintiff's classification as an independent

contractor for tax purposes is misplaced.  Indeed, by relying on these facts, Defendant focuses his argument not on the realities of the parties' working relationship, but on the labels affixed to that relationship – a position directly contrary to that adopted by the Supreme Court of the United States.  *See Rutherford Food*, 331 U.S. 722, 729 ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA].").  Additionally, Defendant fails to recognize that the concept of employment under the FLSA and MWHL is "broader than the common law definition of employment and even broader than several other federal employment-related statutes, such as the Internal Revenue Code." *Herman v. Mid-Atl. Installation Servs., Inc.*, 164 F.Supp.2d 667, 671 (D.Md. 2000), *aff'd*, 16 F.App'x 104 (4th Cir. 2001); *cf. Ansoumana v. Gristede's Operating Corp.*, 255 F.Supp.2d 184, 190 (S.D.N.Y. 2003) (concluding that workers were employees under the FLSA and state wage law even though they had received 1099 forms to report their earnings while working for the defendant).[8]

Focusing instead on the "economic reality" of the parties' relationship suggests that Plaintiff was an employee, rather

---

[8] Form 1099 is generally used, for tax purposes, to report amounts paid to independent contractors.  *See United States v. Cox*, 856 F.2d 187, at *1 (4th Cir. 1988) (unpublished table opinion) (citing 26 U.S.C. § 6041(a)).

than an independent contractor.   The first factor of the test looks to the degree of control that Defendant exercised over the manner in which Plaintiff performed his work.   Where a putative employer "sets the plaintiff['s] schedule[], directs [him] to particular work sites," and provides specific instructions regarding the work to be performed, this factor suggests employee status.   *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F.Supp.2d 569, 579 (D.Md. 2008).   Here, Defendant admits that he picked up Plaintiff each morning at a specified bus stop and drove him to job sites, where he instructed him regarding the work that he needed to perform that day. Plaintiff further asserts that Defendant set his work hours and pay rate, and "individually" supervised his work to ensure that it was of "sufficient quality."   (ECF No. 8-1 § 16).   Thus, contrary to Defendant's conclusory assertion that he "did not exercise any . . . control" over Plaintiff (ECF No. 6, at 8), these allegations suggest that he did, and this factor counsels in favor of finding that an employment relationship existed between the parties.   *See Montoya*, 589 F.Supp.2d at 577-78.

The second factor evaluates opportunities for profit or loss dependent on the plaintiff's managerial skill.   "Generally, an independent contractor undertakes the risks of profit and loss usually associated with an independent business."   *Lewis v. ASAP Land Express, Inc.*, 554 F.Supp.2d 1217, 1223-24 (D.Kan.

15

2008).  Plaintiff did not undertake such risks here.  Defendant
dictated his schedule and paid him a fixed rate for each day
that he worked.  As a result, Plaintiff could not increase his
profits by obtaining additional paid work from Defendant.  On
similar facts, in *Schultz*, the United States Court of Appeals
for the Fourth Circuit expressly declined to find that workers
had opportunities for profit and loss that depended on their
managerial skills.  *See* 466 F.3d at 308 ("[The company] paid the
agents a set rate for each shift worked.  The Prince's schedule
and security needs dictated the number of shifts available and
the hours worked.  There was no way an agent could finish a
shift more efficiently or quickly in order to perform additional
paid work."); *see also Montoya*, 589 F.Supp.2d at 580.
Therefore, this factor also weighs in Plaintiff's favor.

The third factor considers the worker's investment in
equipment and employment of others.  The parties do not contend
that Plaintiff employed any other workers to perform the work
assigned by Defendant.  They do, however, disagree about whether
Plaintiff's investment in tools suggests an employment
relationship.  Defendant contends that Plaintiff provided all
tools necessary to perform his assignments.  Plaintiff admits
providing his own tool belt while working for Defendant, but he
maintains that Defendant provided all remaining tools, such as
scaffolding, necessary to perform the assignments.  At this

16

stage of the proceedings, this factual dispute must be resolved in Plaintiff's favor. *Scott*, 550 U.S. at 378. If Plaintiff did provide only his tool belt, with Defendant purchasing all other necessary tools, this fact strongly suggests that an employment relationship existed between the parties because small expenditures – such as the tool belt - do not indicate "the operation of an independent business enterprise by the worker." *Bonnetts v. Arctic Express, Inc.*, 7 F.Supp.2d 977, 982 (S.D.Ohio 1998) (citing *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987)); *see also Montoya*, 589 F.Supp.2d at 580 (finding employee status where painters provided their own brushes and rollers, but their supervisors provided all remaining tools); *Heath*, 87 F.Supp.2d at 458 (concluding that this factor suggested that workers were employees, rather than contractors, where they purchased their own computers, gloves, and masks, but the putative employer provided all other major equipment necessary to perform their jobs).

The fourth factor, the degree of skill required to perform the job, may weigh in Defendant's favor. Indeed, courts have previously found that the skills employed by construction workers indicate that they may be independent contractors. *E.g., Herman*, 164 F.Supp.2d at 675. Here, Plaintiff's job of installing windows, doors, and siding does constitute construction work, but because "[n]o single factor is

dispositive" in determining employment status, this fact alone does not demonstrate that he is an independent contractor. *Schultz*, 466 F.3d at 305. Rather, other considerations must support this conclusion. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1061 (2$^d$ Cir. 1988) (noting that the six-factor test requires an evaluation of "[t]he totality of the circumstances").

     The fifth and sixth factors, however, once again weigh in favor of employee status. As to the fifth factor, where a plaintiff provides evidence that he has worked exclusively for the defendant for an extended time period, the relative "permanence" of the parties' working relationship suggests that the plaintiff is an employee. *See Montoya*, 589 F.Supp.2d at 581 (granting summary judgment in favor of plaintiffs on the issue of employment status where they had submitted declarations indicating that they had worked full-time for the putative employer for nearly one year); *Heath*, 87 F.Supp.2d at 458 (reasoning that where "the reality is that [plaintiffs] work exclusively for [the defendant]," the plaintiffs may constitute employees). Plaintiff has submitted a declaration that he worked exclusively for Defendant from January 2008 until March 2011, thus suggesting a long-standing relationship between the parties. Similarly, the sixth factor, which looks to whether the work performed by the plaintiff was integral to the

18

defendant's business, comes down in Plaintiff's favor. *Montoya*, 589 F.Supp.2d at 581.   Plaintiff's installation of windows, doors, and siding was arguably a critical component of Defendant's residential construction business, *cf., e.g.*, *Heath*, 87 F.Supp.2d at 459 (finding plaintiffs' work as chicken catchers to be an integral part of the chicken processing business), and Defendant makes no argument to the contrary.

Given that five of the six "economic reality" factors indicate that Plaintiff was an employee, Defendant has failed to show that, as a matter of law, Plaintiff was an independent contractor.   His request for summary judgment on this ground must, therefore, be denied.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss or, alternatively, for summary judgment will be granted in part and denied in part.   A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge